UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 09-186-GWU

ADRENA SAPP, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Adrena Sapp, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, degenerative disc disease of the cervical and lumbar spine, a questionable seizure disorder status post correction of a cranial arteriovenous malformation, alcohol abuse (allegedly in remission), a bipolar disorder, and a sleep disorder (hypersomnia). (Tr. 11). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ found that Mrs. Sapp retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 14-19). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 32, high school education, and a history of skilled work as a manager as well as other unskilled and semi-skilled jobs, could perform any jobs if she were limited to "light" level exertion, with the ability to sit, stand, or walk up to six hours each in an eight-hour day, and also had the following non-exertional restrictions.  She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps or stairs; (3) could not perform commercial driving, could

7

not be required to balance and could do no work around concentrated vibration or industrial hazards; (4) would require work with repetitive procedures, no frequent changes in work routines, no requirement for detailed or complex problem solving, independent planning, or the setting of goals; and (5) should preferably work in an object-oriented environment with only occasional interaction with coworkers, supervisors, or the general public. (Tr. 43). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 44).

On appeal, this court must determine whether the hypothetical factors are supported by substantial evidence.

Mrs. Sapp initially alleged disability due to a bipolar disorder, with an onset date of November 9, 2006. (Tr. 139). At the administrative hearing, she also testified to having numerous physical problems, including spinal stenosis which caused her fingers and legs to go numb (Tr. 28), epileptic seizures, which prevented her from driving (Tr. 33), although she could not describe a seizure and did not know the last time she had experienced one (Tr. 37) and a condition called hypersomnia, for which she was unable to take a stimulant because it increased her seizure problem (Tr. 31).

Although there are a large number of medical records in the transcript, no treating source supplied any restrictions.

As previously noted, the ALJ considered the plaintiff's seizure disorder to be questionable, based on testing by Dr. Toufic Fakhoury, an associate professor of neurology at the University of Kentucky College of Medicine, who found no epileptiform abnormality after continuous EEG monitoring from May 11 to May 13, 2007. (Tr. 350, 528-9). He continued to recommend anti-seizure medications, and the plaintiff reported to another treating source in August, 2007 that her seizure disorder was beginning to be controlled through medication. (Tr. 416). In any case, there is no evidence of restriction greater than the limitations on driving, and work around industrial hazards and heights, included in the hypothetical question.

Regarding the plaintiff's diagnosis of a bipolar disorder, it appears that the diagnosis was initially made by Dr. Karim Sedky, a psychiatrist, but he assessed a Global Assessment of Functioning (GAF) score of 70, reflecting only mild impairment according to the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. The mental restrictions assessed by the ALJ are reasonably consistent with the state agency reviewers, Jane Brake and Lea Perritt. (Tr. 249-51, 315-17).[1]

---

[1] A consultative examiner, Dr. Thomas Frazier, conducted an examination of the plaintiff in March, 2007 and diagnosed major depression with anxiety and opined that the plaintiff's ability to maintain gainful employment was moderately impaired by her psychiatric illness. (Tr. 310-14). The ALJ rejected this opinion because he felt that Dr. Frazier was relying on the plaintiff's subjective statements and was offering an opinion on an impairment outside his area of expertise. (Tr. 17). Dr. Frazier's qualifications are not included in the court transcript, making this rationale somewhat difficult to evaluate,

Mrs. Sapp was extensively tested for her cervical and lumbar spine problems, and an MRI of the cervical spine in April, 2007 was interpreted as showing a small protrusion at C7-T1 along with mild developmental spinal stenosis. (Tr. 354). An April, 2008 cervical MRI showed degenerative disc disease and spurring. (Tr. 597-8). There were several lumbrosacral spine evaluations as well, including an MRI in June, 2007 showing a small disc protrusion at L2-L3 (Tr. 432) and another in April, 2008 showing an L5-S1 protrusion (Tr. 594). However, her physical examinations did not generally show remarkable findings. At Dr. Frazier's examination, she refused to do much of the physical examination, but was found to have a normal manipulation and grip and no sensory deficits. (Tr. 313). Dr. Fakhoury noted a limitation in neck range of motion, and lumbar spine tenderness, but her neurological examination was normal except for some difficulty with tandem walking and an absent Romberg sign. (Tr. 352). Dr. Ellen J. Flinchum, a specialist in physical medicine/rehabilitation, noted the plaintiff had a normal range of motion, intact sensation, and was able to walk on her heels and toes. (Tr. 452). Dr. John Spitalieri, an osteopath/neurosurgeon, noted neck spasm and a slight decrease in the range of motion of the cervical spine and left leg, but normal reflexes and sensation. (Tr. 584-5). Finally, Dr. Ryan Haulk, a consultative examiner, found no tenderness, a full range of motion, no neurological deficits, and a normal posture

---

but the plaintiff has not raised the issue.

and gait. (Tr. 602).² In the absence of restrictions from other sources, the ALJ could reasonably have relied on the opinions of state agency reviewer Amanda Lange, who opined that the plaintiff could perform "medium" level exertion with no climbing of ladders, ropes, or scaffolds and a need to avoid all exposure to hazards. (Tr. 340-5).

The decision will be affirmed.

This the 29th day of July, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

²Despite his essentially normal findings, Dr. Haulk suggested restrictions (Tr. 608) that the VE testified would make it difficult to maintain a job (Tr. 44-5). The restrictions are strikingly inconsistent with the physician's essentially normal physical examination, and the ALJ rejected most of them as being inconsistent with the preponderance of the evidence. (Tr. 17). Once again, the plaintiff has not raised any issue regarding this conclusion on appeal.